The Honorable. The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is United States v. William McGlashan Jr. Appeal number 21-1421. Attorney Phillips, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors, and may it please the Court, my name is Carter Phillips. I represent the appellant, Mr. McGlashan. Chief Judge Howard, I would like to reserve three minutes for rebuttal, please. Yes, certainly. Your Honors, if you will indulge me at least a moment or two to provide some background and context for the prosecution we're dealing with in this case. I have, over the past almost 40 years, attempted to find ways to narrow the scope of the mail and wire fraud statutes in ways that I think are much closer to what Congress might have intended in 1872 and 1909. The Supreme Court has followed my lead in that regard in a number of instances and yet at every turn it seems to me the prosecutions find ways to expand the scope of the statute and we're back here again asking this Court to provide reasonable, adequate notice of what the statute provides for, what is made criminal and to recognize that an expansive interpretation of this statute, which it's a 20-year sentence as a potential penalty for violation of the statute, should be given the kind of narrow interpretation required by candidly due process, by principles of federalism and by the rule of lenity. It's against that background that we turn to the three arguments that we've made here. The first question is whether or not the test scheme as alleged by the United States is property within the meaning of Section 1341. The Supreme Court told us in McNally and repeated in Cleveland that property is not just anything of value. Property has to be what has been well understood as involving property as a matter of common law or as a matter of common usage. Mr. Phillips, do you think Hedethi was incorrect? I'm sorry, which case? Hedethi. Maybe I'm mispronouncing that. No, the Third Circuit, I do think the Third Circuit's decision is incorrect because while it turns ultimately in the way the Third Circuit analyzed it as far as on the physical test sheets themselves because that was in fact part of the scheme, the reality is that that case should have been analyzed and what was the object of the fraud and it was to inflate the test scores and inflated test scores are not property as anyone has recognized it up to this point. And we should recognize that the concept of saying that test scores are property under Section 1341 means that every act of cheating in grade school, middle school, high school involves a property crime. But every act of cheating doesn't involve something that has economic value. Well, the vast majority of cheating will have some form of quid pro quo. Even at the grade school level, there will be some effort to justify or to encourage a classmate to take certain action. It may be money, it may be something else. If a fifth grader looked over and copied someone's test answers, that doesn't involve money. That's true, but if a fifth grader texted his classmate, I'm going to look at your answers and I'll give you a Diet Coke afterwards if that's okay with you, that's a federal crime punishable by 20 years in prison. I cannot imagine that the Congress of 1872 or 1909 imagined that that was the kind of conduct that it intended to criminalize in that statute. And as I say, the government's theory here has no limit. The person who hands over the Coke doesn't have a property interest in the exam. I don't think anyone has a property interest in the exam, Judge Thompson. I mean, that's right. But under the government's theory, if the test score is property, then anything given in return for inflating that test score is a violation of this statute. And what I'm saying is there is no basis for the court to go that far. So, counsel, what you're suggesting is that if Congress wants to criminalize this particular conduct, it needs to amend the statute. This particular conduct is not encompassed under the statute. Am I correct? That's your argument? That's my argument. The court has repeatedly said that any time that the courts are inclined to think that you should expand or prosecutors want to expand the scope of the mail and wire fraud statutes, it needs to go to Congress and get a clearer statement from Congress before you go that far. So in theory, and this court and the district courts, there's been hundreds, thousands of conviction, not exactly with the school tests, but under your theory, all these convictions for these many years, they're all in that, or at least the statute shouldn't even have been applied. So am I correct? Well, that's exactly what happened in McNally. There had been literally hundreds. I don't know whether thousands is the right number, but there had been hundreds of convictions for public corruption, including people as recognizable as Governor Mandel and Kerner. And all of those prosecutions were, yes, placed, you know, declared invalid because the court said, you have to, you know, the prosecutors have to stay within the bounds that Congress sets. You can't just simply use this as a catch-all for any time you identify someone you believe has engaged in some form of cheating or otherwise inappropriate conduct. That's not the proper scope of the wire fraud statute. And so that's the reason why test scores are not property. You will look in vain in the red brief of the United States to find any case in which they've identified test scores as property. And so I would ask that the court set aside the first theory of the indictment in this case. Can I ask you one question about that, counsel? Yes, your honor. So I have not thought of wire fraud statute as a theft statute per se, but more sort of borrowing. I think it was Leonard Hand who talked about, you know, you lose the ability to bargain with the true facts before you. I would say perhaps we would think of it as that the loss of the ability to it, but to make an assessment with the true facts before the alleged victim. If I'm thinking of that in the right way, it would seem to me that there might be some room between the traditional property concepts in terms of theft, where there may be a need for exportation in the case of tangible property or other concepts that come into play in the case of intangible property. And to comply with Supreme Court precedent, what we should be looking for is not just an analogy to real property or personality, but rather a product. It could be data. It could be, for example, in the cases that recognize confidential business information, something that has value that is unique in a sense. But the focus here is on the loss of the true facts. The person making the assessment doesn't have the true facts in front of them. Is there something wrong with the way I'm looking at that? How would you narrow it? Or would you just stand on what you've said so far? Well, I would attempt to answer your question directly to Judge Howard. I think when Judge Hand wrote what he wrote, he had in mind a much broader concept of property than the Supreme Court embraced in either McNally or in Cleveland. I think the Supreme Court has now said that access to all of the information is not what the property statute is about. It is labeled fraud and swindle. It is designed to deal with stealing money, using at the time the advanced technologies of the Postal Service and the advanced technologies of telephone and telegraph to steal large sums of money, which is why there's a 20-year sentence that attaches to the conduct, which is, again, a reason to think about is it conceivable that the Congress that enacted those statutes had in mind this kind of behavior and then attached that kind of a serious penalty to it. I submit to you that that's the better way of thinking about why this is not an effort to get at property as that term should be understood, certainly clearly made clear in both McNally and in Cleveland. If you want to get to the second point, which is the informational issue. Why does it encompass intellectual property? It clearly encompasses intellectual property. It can be any kind of property as long as it's a well-recognized, well-accepted form of property. Intellectual property certainly qualifies on that score. But what we're talking about here are test scores. Test scores are not intellectual property of anybody. The scores are handed out. They have to be handed out, have to be provided to the public. That's the whole purpose of these things. They are not property as anyone normally thinks of it. And, again, you'll look in the government's brief in vain looking for any case that has ever described test scores as property. Even in Haddafi, your honor, it wasn't the scores that the court focused on. It was the physical test itself and the access that was needed. Now, that was a fairly small item. It would be completely inconsistent with Kelly to think of that as the object of the fraud in that case when all it's talking about is an incidental cost of what was the real fraud in that case. So Haddafi's wrong on both counts. But in any event, the notion that this is a well-established property at right is simply not true. I'm sorry, your honor. You say the Sixth Circuit's case, Haddafi, is wrong. Your position would also be that the other case, Frost, I mean, this is the Sixth Circuit, Frost. Is that case also wrong or can you distinguish that? In Haddafi, I think it's true. Haddafi is the Third Circuit. Again, first of all, none of these cases obviously is binding on this court. But at the end of the day, you know, our view is that the way to look at these cases is, you know, is a test score a property right? And the answer to that is no. It's never been recognized that way. And therefore, efforts to inflate a test score simply don't qualify regardless of how you embody it. People pay to take the test. The ACT and SAT have the exclusive right to control how it's distributed. It has to be distributed directly to the school for it to have value. So the mere fact that it may be made public by virtue of the fact that it's given to the student, the student can't use it directly to engage with the institution of higher education. College has to get the test score strictly from ACT or SAT, something that the student pays for to take. All of that's true, Judge Thompson, and none of that makes this a property interest within the meaning of the way the court has identified property interests. That's not intellectual property, or at least there's nothing that I can articulate as intellectual property there. Are there things of value? Yes. Courts already said simply because something is of value is not sufficient to make it property. It has to be an item that has been accepted in common law and otherwise as a property interest or as an element of property, and any effort to expand beyond that runs into two real problems. The first one is what the court has said property means, and two, I would say, is the rule of lenity and the need if you can construe the statute in either of two ways, so that you only have property interests that are recognized as such, or so clearly have been recognized, is a significant way to interpret it. That's the better way to interpret the statute, and it doesn't say to crime under those circumstances. Counsel, we have used up all of your time. However, I know there are at least two more sort of principal issues here, and I would like to have you take a few minutes to give us your position on those. I appreciate that, Judge Howard. Thank you. I'll be very brief with respect to the second issue. That's the one that alleges whether or not this had to do with obtaining the tests, and it's quite clear that that was not the object of this scheme. The object of the scheme was to inflate the test scores. Obtaining the tests would have happened in any event. He paid his registration fee. He would have gotten the test. The test would have gone into other people's hands before they ultimately went on. So I submit to you that under Kelly, that is simply not an appropriate way to think about. This indictment doesn't charge a crime under these circumstances. And then the third argument, which I think in some ways gets to the point you were making, Chief Judge Howard, in connection with Learned Hand, is what do you do with the honest services component that Congress added in 1987? And there it seems to me, again, the fundamental question is what is the core of honest services as that concept was understood in 1987? The court in Skilling said you have to go back to the core. And if you go beyond that, the problem is you run right into void for vagueness problems under the due process clause. And to me, what we know the core was was mostly public officials and public employees, but not exclusively. And there are certainly enough cases, I suppose, of private employees of the victims of fraud that you could argue that's at least at the core. But when you get beyond that to independent contractors, there I would say, Your Honor, you're way beyond the core. You have very few cases pre-1987 that went that far. The honest services component of the mail and wire fraud statute, in the vast majority of cases, involved public officials and public employees, very few involving private actors, and of those, virtually none involving independent contractors. So the line I would ask this court to draw is that between employees and independent contractors. And the reason I would ask you to draw that line is because otherwise you end up in a situation where the wire fraud statute becomes a trap for the unwary. People don't know who's imbued with fiduciary responsibilities and who is not. And that you avoid the void for vagueness problem of expanding dramatically the scope of who could potentially be drawn in under this statute. And as the Supreme Court has consistently said, if you want to go an extra step, you want to bring in another batch of defendants under the realm of this statutory scheme, ask Congress to do it. Don't simply allow the prosecutors to come up with more and different imaginative ways to expand and use the legal services component of the statute to make up for the fact that the property component is not satisfied by these very same cases. The court should treat them in parallel. Go back to the rule of lenity, which says this could apply to employees, could apply to independent contractors. No reason to expand it to independent contractors. Not compelled by the language of the statute. And the rule of lenity would say do not do that. And if I'm right on that, Your Honor, you should reverse the guilty pleas of my client and allow this prosecution to end. If there are no further questions, I'd like to reserve the balance of my time. Yes, you have three minutes later. Thank you. Thank you. Ms. DeVincentis, if you would mute your audio and video, Mr. Phillips. Good morning. May it please the court. Alexia DeVincentis on behalf of the United States. I'd like to start by noting that there's no dispute here that the district court's denial  so long as any one of the three theories of wire fraud alleged in the indictment is valid. And while the government maintains that each of those theories is equally valid, this court needn't go any further than deciding the one that presents the most straightforward path to affirmance. And in that vein, I will pick up where the defendant left off with honest services fraud. Because the defendant hasn't disputed here that Dvorsky owed a fiduciary duty to the ACT, that the defendant knew of that duty, and that the defendant bribed Dvorsky in breach of that duty. What he instead seeks to do is capitalize on the sheer luck, as he would have it, that the agreement between Dvorsky and the ACT didn't label him an ACT. And he does so by asking this court to adopt a novel construction of the honest services fraud statute that places his conduct beyond its reach. For reasons that I will discuss momentarily, that argument fails on the merits. But it's also an argument that this court doesn't need to reach. And that's because it's an argument that is waived by virtue of the defendant's plea agreement. But even if not waived, it's also an argument that is forfeited by virtue of his failure to raise it below. That's because however one reads the defendant's reply brief before the district court, what is clear what the defendant has not disputed and cannot dispute is that he never once articulated to the district court his theory that that excludes informal fiduciary relationships. And nor, for that matter, did he articulate his theory that due process concerns compel that limitation. That is classic forfeiture. It isn't the district court's job to read between the lines to discern arguments that the defendant didn't squarely make. And this court's case law is clear that a party is not at liberty to articulate specific arguments for the first time on appeal just because the general issue was before the district court. The defendant's argument on honest services fraud is therefore subject to plain error review, a standard that even he doesn't argue that he could satisfy. But in any event, the defendant's argument would also fail on the merits. The argument regarding a core is misguided for precisely the reasons set forth by the Scanlon case, to which he offers no response, and his fallback reliance on fair notice concerns fares no better. Counsel referred just now to the application of the honest services fraud statute to informal fiduciary duties as imaginative. But there's nothing imaginative about it. As we discussed in our brief, breach of an informal fiduciary's duties as an element of criminal liability isn't unique to honest services fraud. And in fact, in the context of securities fraud, the Supreme Court has rejected essentially the same fair notice concerns that the defendant is making here. Counsel, let me ask you a question. It's very similar to the facts that Judge Thompson raised in asking your opposing counsel. But let's assume under the government's interpretation of the statute, and she talked about fifth graders, let's make them 18-year-old freshmen. But let's assume 18-year-old freshmen is cheating. The requirement is the mandatory freshman math course, and they text each other, and they cheat, and somebody gets a Coke or gives them $20. That would be that same type of conduct under the theory here would still be criminal conduct under Section 1343, correct? Whether it's prosecuted or not, it's another story. But in theory, it's subject to that same statute. Am I correct? So I take it we're shifting gears to the test scores as a property issue. And the response is that no, contrary to what the defendant wants this court to believe, the government's theory here doesn't require that all cheating in any academic setting constitutes wire fraud. And I think some of the questions hit on the key point here, which is that score reports are the ACT's stock and trade. They are what the ACT sells in pursuit of making money. The defendant would have this case be about just an inflated test score, but that's not what it's about. What the defendant obtained through misrepresentation wasn't just a higher test score. What he obtained was a score report that bore the imprimatur of the ACT and thereby indicated that the reported score was obtained under fair testing conditions. To Judge Thompson's point, a score that was produced by some unknown entity or simply reported by the defendant's son to colleges himself would have been absolutely useless to him. It was the signifying power of the ACT's stamp of approval that made it valuable to the defendant as something that he was willing to pay for and relatedly that the ACT was able to sell for money. So under those precepts, under those concepts of property, traditional concepts of property, which attach great value to both economic control and the right to exclude, the score reports here are clearly property. Thank you. Is it a sufficient property interest that the Congress would have recognized in the 1800s though? So as to be able to call it a traditional property right? Well, I think actually what the Supreme Court cases are saying in terms of a traditional property right is not that the specific thing has to have been previously recognized as property, but rather that the thing that is alleged to be property has the characteristics that are traditionally associated with property. And to repeat, that is the case here. We're looking at economic value and the right to exclude others. Those, as many cases illustrate, are key to defining something as property. And here I would highlight in particular Carpenter and also Cleveland. Carpenter demonstrates that property isn't limited to tangibles and something is not excluded from the definition of property simply because it is or conveys information. Moreover, information that is gathered at the cost of enterprise, labor, and money can constitute property where it's distributed and sold to those who are willing to pay money for it as any other good. That is the case here where the ACT has invested labor and capital to develop a trademark, copyrighted materials, and a brand name that enable it to provide score reports in exchange for money in the form of fees for registration and fees for additional score reports. The form in which those reports are conveyed is meaningless. And, in fact, I would suggest that the defendants' reply brief argument that the piece of paper on which the Hedayethi court's decision rested was just an incidental cost actually serves to underscore the government's argument that the value of these score reports has nothing to do with them being embodied in physical form. Unless the court has any further questions regarding either the honest services fraud argument or the property argument, I'll turn, I suppose, to Kelly. The defendants' Kelly argument is... Before you turn to the honest services, assuming he hasn't forfeited the argument, what do you have to say about independent contractors not having a sufficient fiduciary link? And before you answer that generally, is it fair to assume that the proctors are paid by ACT? Yes, I believe it's reflected in the Rule 11 colloquy that they were paid a sum by the ACT. Okay. So even though they were independent contractors, I mean, could you just help me with the argument that that's not a sufficient fiduciary duty because it had to be limited to a public employee or a private employee, an employee? Sure. Well, the defendant here, first of all, has offered no support for, no compelling support for the argument that the fiduciary duty requirement is limited to the specific formal fiduciary duties that are set forth, for example, in Skillings Footnote 41. And I think it's important here to proceed with the correct orientation. The defendant hasn't disputed that Dvorsky owed a fiduciary duty to the ACT, and I would suggest that he hasn't done so for good reason, and for a good reason that underscores the overbreath of the limiting construction that he is providing. According to the defendant's proposed limiting construction, even agents who are black-letter fiduciaries would fall outside of the scope of the Honor Services Fraud Statute. Even the, quote-unquote, temporary insiders who are given access to property and serve interests of the party and trusting him with property, they would be outside of the scope of the Honor Services Fraud Statute. Even situations of reliance, de facto control, and dominance would be outside of the reach of the Honor Services Fraud Statute. And the key point here is that the circumstances that give rise to those informal fiduciary duties are well-defined in the law. And again, as the defendant's own failure to challenge this law as being vague as applied to him suggests, there are paradigmatic informal relationships as to which the standards are clear. The contours of the defendant's proposed limiting construction are therefore not limited by any sort of, they're not being driven by any sort of fair notice concerns. There be it being driven by expediency, and they should be rejected. Let's say we stick with what I thought was a more traditional view of an outside fiduciary, the lawyer, the CPA, financial advisor, those who may have sort of the inside information or are in these positions of great trust. If the argument weren't so broad as to exclude those, why does this particular individual fall within the fiduciary concept itself? I mean, he's not a CPA, he's not a lawyer, he's not somebody they're relying on for advice. What is it that casts him in the terms of a fiduciary? Well, as was embedded in your Honor's question, the defendant's argument is that broad. But even if it weren't, I think that the existence of a fiduciary relationship in this circumstance is clear and was well understood by the defendant. Any reasonable person could reasonably understand that an individual who is hired for the sole purpose of administering a standardized test owes a fiduciary duty not to accept bribes in order to allow cheating on that test. Again, there simply are no notice concerns as regards the facts of this case. And given that there are no concerns regarding the facts of this case… Why aren't they all considered fiduciaries? If I'm understanding correctly, your Honor's question, it sounded like part of the example that you were providing is actually positing an arm's length relationship. Most business transactions, there's no reason to expect that the person on the other side of the V is in any sort of fiduciary relationship with respect to the other person. With respect to the entity that they are acting on behalf of. Well, when an individual is acting on behalf of an entity, I think the law is clear that they do in fact have a fiduciary duty. Automatically. What's your best case for that? Is it the skilling footnote? I think the skilling footnote, I think Milovanovic is compelling here. And the defendant in his reply brief tries to dismiss Milovanovic as having not engaged with his core argument regarding skilling. But Milovanovic did engage with skilling. And it simply found that what skilling had to say about fiduciary duties pointed in the other direction. And I think in this regard, it's rather telling that the defendant has offered no way to square his reading of skilling with the court citation in that same case to Chiarella. Which is a decision that by the time of skilling had been understood for 30 years as applying to both formal and informal fiduciary relationships alike. Other questions from the panel? Thank you, Ms. DeVincentis. If you would mute your audio and video, Mr. Phillips, you reserve some time. Just making sure I'm back on. Yes. Wonderful. Thank you, Your Honor. I will try to be brief. First of all, everything that my learned colleague on the other side said about the importance of scores, test scores, applies just as much to grade school scores and high school scores and every other score and grades. Because at the end of the day, the grades reflect the importance attached to the Sidwell, if I can just take an example, the Sidwell Friends grades, the Lehman High School grades. It's all the same. The bottom line is there is no body of law that remotely identifies test scores of any sort or grades of any sort as being a property within the meaning of the statute. And candidly, the government's basic position. I mean, you ask the question of her, does this mean it applies to all cheating that goes on as long as there's a quid pro quo? At the end of the day, the answer to that is yes. And it's not an answer to say ACT is not an academic setting. ACT is a nonprofit enterprise. And so there's no difference between ACT and its scoring mechanisms and any other school that operates in that regard. There is no basis for a distinction in that regard. With respect to the government's position that it's important to look at the right to exclude and control, that is precisely the same argument that the government made in Cleveland. Because those licenses gave the government the right to control and to exclude. And the court said that's not enough to satisfy the requirement of property. What you need to demonstrate, what the government must show, is that there is in fact a body of law that identifies this as property in order to be within the statute. On the question of the honest services, let me take up forfeiture in the first instance. We said specifically in our briefing before the district court that the Ninth Circuit's decision in Milanovich, I think I probably butchered that name, but anyway, the Ninth Circuit's opinion rejecting the concept of informal fiduciaries was wrong as a matter of law. And that an element of this offense requires formal fiduciary duties. That's the argument we made in the district court. That candidly was the argument that the government responded to in the district court and that the district court itself rejected when it cited that case. So the idea that we forfeited that argument is, to my mind, completely off the table. I do think it's important to recognize that the government is working hard to avoid having you decide the question of the scope of the honest services. And for good reason. Because at the end of the day, once you go past public officials, public employees, and go past private employees, and go past people whom we all recognize as being imbued with fiduciary responsibilities, you then have no more limiting principles whatsoever. And indeed, she said it herself, that somehow the statute would not extend to people who have, quote, de facto control, no matter how the nature of their relationship. I submit to you there is no way to know ahead of time whether or not someone has de facto control in a relationship. And so while it obviously is not appropriate to bribe, at the end of the day, not every act of bribery is a federal criminal offense punishable by a 20-year sentence. But X method of doing business is dependent upon these monitors performing their responsibilities properly. Otherwise, the property interest they have in administering the test and getting paid for it is meaningless. Well, to be sure, first of all, the sentencing report in this case actually said that ACT didn't suffer any monetary injury as a consequence of this scheme to begin with. But second of all, even accepting that there could be a negative harm to ACT in the broad scheme of things, that still doesn't convert the underlying activity involving test scores as property, and it doesn't make the individual proctor or the testing center a fiduciary in any meaningful way. Indeed, the proctor is not. In this case, there's no evidence that the proctor had any relationship with the ACT. It was only the testing center that had a relationship with the ACT. And again, I would argue that if you... So you're saying the proctor wasn't an independent contractor? I'm sorry, Your Honor? You're saying the proctor was not an independent contractor? I thought you were arguing that he was, but that it didn't cover this type of independent contractor. Well, I would argue that he may be a de facto independent contractor. He was, as I understand it, working for the testing center, not for ACT. He wasn't employed by or otherwise. I think he was paid by the testing center for doing the proctoring activity. I don't dispute that there is an independent contractor relationship between the center where the tests were conducted and ACT. No question about that. But that simply tees up, to my mind, the fundamental question of where do you draw the line? And the place to draw the line is employees and other well-understood fiduciaries. If you get past that line, it seems to me that the rule of lenity argues in favor of saying that's not a crime punishable by 20 years. Would the testing center itself have a fiduciary responsibility to ACT? It might or it might not. That's the whole question. I mean, that's the reason why informal de facto fiduciaries can't be the appropriate line for imposing criminal sanctions under these circumstances unless Congress expressly extends the statute to cover those kinds of informal fiduciaries. It is clear to me that when Congress overruled McNally in 1987 to include honest services, it did not have in mind this kind of a prosecution. It had in mind prosecutions of Governor Mandel, Governor Kerner, and other acts of public corruption. That's the core. And Skilling tells you, stick to the core. And a prosecution in this case goes way beyond the core and, therefore, should be stricken. Judge Helpe? Yes, just one very quick question, and I think this is not an issue. It's not contested by the government. But in your brief, you note that your client entered a conditional guilty plea. And Rule 11 requires that the conditional guilty plea be accepted with the consent of the court and the government, both. That happened in this case, right? Yes, Your Honor. I just wanted to make sure because it wasn't clear. So thank you, and also, Counsel Vicente, for your zealous and well-prepared arguments. Thank you. Thank you, Counsel. Thank you, Your Honor. That concludes arguments in this case. Attorney Phillips and Attorney DeVincentis, you may disconnect from the hearing at this time.